WEEK vs. BOSWORTH and others.

*September 5 — September 23, 1884.*

*Land warrant issued to soldier in Mexican war: Assignment before issuance void: Entry of land in name of warrantee: Resulting trust: Estoppel of warrantee: Ratification of entry.*

A warrant for 160 acres of land, issued in 1849 in the name of R., a soldier in the Mexican war, was presented at a government land-office in 1866 by H. & G., together with an assignment thereof purporting to have been executed by R. *before the warrant was issued.* For some informality in the acknowledgment of the assignment the warrant was not allowed to be located in the name of H. & G., who thereupon detached the assignment and located the warrant in the name of R. R. first learned of the entry of the land in 1882, and thereupon conveyed it by quitclaim deed. In an action against his grantee by one claiming under H. & G. to compel a conveyance of the legal title, R. testified that in 1848 or 1849 he sold his "discharge" to some one for $50 and executed some papers in relation thereto, but did not thereafter sign any papers in regard to the matter except the quitclaim deed to the defendant. It appeared that H. & G. and those claiming under

Week vs. Bosworth and others.

them had paid all taxes down to the commencement of the action.
*Held:*

(1) The assignment, having been made before the warrant issued, was absolutely void under the act of Congress, February 11, 1847. H. & G. were therefore never the lawful owners of the warrant, nor could they at any time have compelled R. to make a valid assignment to them; and their grantees are in no better position.

(2) Even if H. & G. had been the owners of the warrant, it being the consideration paid for the land and they having voluntarily directed the title to be conveyed to R., such title was absolute in him and no trust could result in their favor. R. S., sec. 2077.

(3) Not having known of the entry of the land until 1882, R. was not estopped then to assert his title.

ᐧ (4) R. was not bound to repudiate the location of the warrant in his name and sue as for a conversion thereof, but might ratify such location and claim the land.

APPEAL from the Circuit Court for *Portage* County.

The following statement of the case was prepared by Mr. Justice TAYLOR, as a part of the opinion:

This is an equitable action brought to compel the defendants to convey to the plaintiff the legal title to 160 acres of land which, it is claimed, equitably belongs to him. The undisputed evidence shows that the legal title to the lands in controversy, at the time of the commencement of the action, was in the defendants, as the grantees of one George W. Ransone. Ransone, it appears, was a soldier in the Mexican war, and, as such, entitled to a land-warrant for 160 acres of land; that a land-warrant, No. 60,819, was duly issued to him by the proper department of the government, and that such warrant was, on the 11th of June, 1866, located on the land in controversy in his name; that such warrant was presented to the officers of the land-office by John Hackett and W. T. Goodhue, who claimed to own the same, but, not having any sufficient assignment thereof, located it in the name of the warrantee, Ransone. Ransone did not know of the entry of the land until 1882, when he

claimed the land so located, and shortly after he had knowledge of the fact he conveyed it by quitclaim deed to L. N. Anson, one of the defendants, for the consideration of $300. *Week*, the plaintiff, claims the land by virtue of a chain of title from Hackett & Goodhue. The plaintiff, and those under whom he claims, have paid the taxes on said lands down to the time of the commencement of this action, and neither has been in the actual possession thereof. The land is now worth about $6,000. The evidence further shows that in June or July, 1848 or 1849, Ransone was sick, and he says he sold his discharge to some person for $50. He does not state what the name of the person was. He wanted the money to get home with. He signed some paper or papers, but what they were he does not know, and that he never signed any paper or papers in regard to the matter, after that, until he made the deed to Anson.

The receiver of the land-office where the warrant was located states that Hackett & Goodhue presented this warrant, with others; that it had an assignment attached to it when first presented, purporting to be an assignment by the warrantee, but the acknowledgment of the assignment was not so certified as to authorize a location of it in the name of the assignee, *and the assignment was executed before the warrant was issued;* that the officers refused to permit the warrant to be located in the name of Hackett & Goodhue; that Hackett & Goodhue then removed the assignment from the warrant, and presented the same for location on a subsequent day in the name of Ransone, the warrantee, and the officers allowed the location to be made in his name. The following are copies of the entries made in the land-office where the warrant was located:

APPLICATION.

"Under Act, 11th February, 1847.
"Land Warrant No. 60,819.
                    "Register and Receiver's No. 148.

"LAND OFFICE, STEVENS POINT, WIS., June 11, 1866.

"We certify that the attached Military Bounty Land Warrant, No. 60,819, was on this day received at this office from George W. Ransone, of Marathon county, state of Wisconsin.                    S. H. ALBAN, Register.

"ALMANSON EATON, Receiver."

"I, Geo. W. Ransone, of Marathon county, state of Wisconsin, hereby locate the S. E. ¼ N. E. ¼, and E. ½ of S. E. ¼, section 19, and S. W. ¼ of N. W. ¼ of section No. 20, in township No. twenty-eight (28) N., of range No. seven (7) E., in the district of lands subject to sale at the land-office at Stevens Point, Wisconsin, containing 160 acres, in satisfaction of the attached warrant, numbered 60,819.

"Witness my hand this 11th day of June, A. D. 1866.

"GEORGE W. RANSONE.

"Attest: S. H. ALBAN, Register.

"ALMANSON EATON, Receiver."

"LAND OFFICE, STEVENS POINT, WIS., June 11, 1866.

"We hereby certify that the above location is correct, being in accordance with law and instructions.

"ALMANSON EATON, Receiver.

"S. H. ALBAN, Register.

"(4 — 194.)   Act of 1847.

"REGISTER'S OFFICE, STEVENS POINT, WIS., June 11, 1866.

"Military Land Warrant No. 60,819, in the name of George W. Ransone, has this day been located by George W. Ransone upon the S. E. ¼ N. E. ¼, and E. ½ of S. E. ¼, section 19, and S. W. ¼ of N. W. ¼ of section 20 in township 28 N., of range 7 E., subject to any preemption claim which may be filed for said land within thirty days from this date.

"Contents of tract located, 160 acres. The dates of assignments in all cases must be given at the time they are acknowledged, and no assignment of this certificate will be regarded. 7566 — M.                    S. H. ALBAN, Register."

The certificate last above copied, it is presumed, was given

by the register to the person locating the warrant, or, to the person appearing and locating it in his name.

There was a judgment in favor of the plaintiff for the relief demanded in the complaint. The defendants appealed.

For the appellants there was a brief by *Raymond & Haseltine*, and the cause was argued orally by *Wm. F. Vilas.*

*G. W. Cate*, for the respondent.

TAYLOR, J. It is apparent, from the foregoing statement of the evidence and facts of the case, that Hackett & Goodhue never obtained a legal title to the lands in controversy, and their deeds could convey none to their grantees. The legal title, under the statutes of this state, for all practical purposes, was in Ransone and his grantees, even though no patent had been issued upon such location. See sec. 4165, R. S. 1878; sec. 130, ch. 137, R. S. 1858. Whether a patent has ever been issued does not appear from the evidence.

The respondents based their right to have the legal title conveyed to them upon two propositions. *First*, that their grantors, Hackett & Goodhue, were the lawful owners of the land-warrant at the time the location was made, and, as such, entitled to the lands upon which it was located. We think the evidence fails to show any such ownership. If they were the owners of the warrant, it must have been by virtue of some valid contract of purchase from the warrantee or his lawful assignee or assignees. The evidence clearly shows that the only claim they made to the warrant was by virtue of an assignment purporting to be made by the warrantee, Ransone, which, on its face, showed that it was made in violation of a statute of the United States, and was rendered by such statute absolutely void. See Act of Congress of February 11, 1847, and Lester's Land L. 125. This act, after declaring the right of a soldier to a warrant for 160 acres, and the method of obtaining and locating the

same, adds this provision: "All sales, mortgages, powers, or other instruments of writing going to affect the title or claim to any such bounty-right made or executed prior to the issue of such warrant or certificate, shall be null and void to all intents and purposes whatsoever, nor shall such claim to bounty-right be in any wise affected by or charged with or subject to the payment of any debt or claim incurred by the solder prior to the issuing of such certificate or warrant." In view of this statute, which was evidently enacted to protect the soldier against just such a transaction as the one under which Hackett & Goodhue claim title to the warrant in question, it is absurd to say that they were purchasers in good faith in open market of the warrant in question, and are therefore entitled to the aid of a court of equity to enforce a lawful conveyance to them of the land upon which the warrant was located.

It is unnecessary to determine what their position would have been had the assignment, under which they claim title, upon its face purported to have been made after the warrant was in fact issued. Had the soldier, knowing what he was doing, voluntarily executed an assignment in blank, properly certified and acknowledged, with the knowledge that the person to whom it was delivered would fill up the blanks with false dates so as to make it appear that it was executed after the warrant was issued, and the person to whom such blank assignment had been delivered, after obtaining the warrant, had filled up the blanks in the assignment so as to make it appear that it had been executed after the date of the warrant, and then, upon the strength of such assignment, had sold the warrant to one having no knowledge of the facts, there might be a grave question whether; for the purpose of defeating such sale, he could have shown the facts and claimed the benefit of the statute. In such case it might well be said that, having voluntarily placed in the hands of a party the means of committing a fraud upon

an innocent third person, with the knowledge that such means were likely to be used, a court of equity might well refuse to grant him aid in avoiding such fraudulent assignment. But in the case at bar the warrantee named in the land-warrant, so far as the evidence in this case shows, did nothing of that kind. He did not place in the hands of the person who paid him the $50 for his discharge, as he terms it, anything which would enable such purchaser to defraud any person who might take the risk of purchasing the warrant issued to him. The paper he did place in his hands carried on its face the evidence of its invalidity, and every person purchasing on the strength of such paper must be held to have known that he could obtain no title to the warrant by such purchase, or to the land upon which it might be located.

Neither are we called upon to decide what rights Ransone and his grantees would have had to the land if the warrant had been in fact located in the name of Hackett & Goodhue, as his assignees, and they had afterwards conveyed the lands to a *bona fide* purchaser having no knowledge of the fact as to when the assignment was made by Ransone. Under such circumstances we would have a case similar to the case of *Perkins v. Hays*, 5 Am. Dec. 680.

It seems to us quite clear that Hackett & Goodhue could not have compelled Ransone in 1866, or at any other time, to have executed a valid assignment of the warrant to them, so as to enable them to lawfully locate the warrant in their own names, upon the strength of an assignment which was void upon its face because made in violation of a public law enacted for the protection of the soldier and for the purpose of preventing just such assignments from being made. No authorities need be cited to sustain so self-evident a proposition. They would have no standing in the court upon any claim of having been misled by anything theretofore done by Ransone, as what he had done and all he had done

was before them when they made the purchase of the warrant; and they were bound to know that his act was absolutely null and void for all purposes. When they purchased, therefore, they assumed the risk of procuring from him a conveyance of the land located in his name, in order to perfect their title.

We think there is another fatal objection to Hackett & Goodhue recovering these lands from Ransone or his grantees on the ground that they were owners of the land-warrant at the time of its location, even if it were shown that they were the real owners of such warrant. The evidence shows that after the officers of the land-office refused to permit them to locate the warrant in their own names, as assignees of Ransone, they voluntarily removed the void assignment from the warrant, and presented the same for location in the name of Ransone, and caused the same to be located in his name. The land-warrant was the consideration paid to the United States for the land sold and conveyed by the United States to Ransone. The consideration for the land, on the theory that H. & G. owned the warrant, was paid by H. & G., and they having voluntarily directed the United States to convey the title of the land to Ransone, under the provisions of sec. 7, ch. 84, R. S. 1858, now sec. 2077, R. S. 1878, the title in Ransone is an absolute title, and no trust can be raised in favor of H. & G. *Kluender v. Fenske,* 53 Wis. 118; *Knight v. Leary,* 54 Wis. 459, 472; *Garfield v. Hatmaker,* 15 N. Y. 475, 483. The fact that the consideration paid for the lands was a land-warrant instead of $200 in money can make no difference. The statute does not speak of money paid, but the consideration paid. Here, upon the theory that H. & G. owned the land-warrant, they paid the consideration for the land to the United States, and when they directed the conveyance to be made to Ransone, they bring themselves clearly within the statute. The title vests absolutely in Ransone; and there is no resulting trust in

favor of H. & G. As between H. & G. and Ransone, after the location made in 1866, it is clear Ransone became the legal owner of the lands in controversy; and there were no equities existing between the parties at that time which would authorize a court of equity to decree a conveyance of the title by Ransone to H. & G.

It is claimed, *secondly*, that Ransone ought to be estopped from claiming the title to the lands, because of his delay in asserting such title, and because the plaintiff and those under whom he claims have during all this time made claim to the lands, treated it as their own, paid the taxes on it as theirs, and conveyed it by deeds for a large consideration. It is not claimed that the acts of H. & G. and their grantees amount to an adverse possession of the lands under the statute, but that they raise an equitable estoppel against Ransone and his grantees. It is possible that a court of equity might say that Ransone should be estopped from setting up a claim to this land after lying still for sixteen years without making claim or paying any taxes, had the proof shown that he knew all this time that H. & G. and their grantees were claiming to own the lands, paying the taxes, and conveying the same for valuable consideration; but upon such a state of facts, his title being of record in the land-office, of which the parties dealing with the land must be presumed to have notice, it is a doubtful question whether the facts above stated could raise any equitable estoppel against Ransone. See *Kingman v. Graham*, 51 Wis. 232, and the cases cited in the opinion on pages 245, 246, 247.

As the evidence in this case shows that Ransone had no knowledge of what had been done in regard to the lands by H. & G. and their grantees until 1882; that he in fact did not know he owned the land until that time; and that immediately upon his knowledge of the fact of his ownership he laid claim of title to it, and conveyed the land to Anson, it completely negatives all pretense of neglect on his part

which should raise an estoppel against him, either at law or in equity. We do not think any negligence can be predicated upon the fact that Ransone did not long before ascertain that his land-warrant had been located on the lands in question, and that the persons who located it in his name claimed to be the owners of his warrant and of the land so located. The difficulty of ascertaining that fact from the multitude of places where his warrant could have been located, would be a sufficient excuse for not ascertaining it sooner, if any such excuse were needed.

Upon the evidence in this case we see no grounds for avoiding the title of Ransone and his grantees in favor of the parties who voluntarily placed the title in him. There is nothing in the case to make the position of the grantees of H. & G. better than their own. When they purchased they must be presumed to have known that H. & G. had no legal title to the lands they were undertaking to sell, and there are no facts proven which establish any equities in them. They are not, therefore, entitled to the relief prayed for.

The point made by the learned counsel for the respondent — that Ransone should not be allowed to hold the land entered with his warrant, admitting that his assignment was void and the title to the warrant remained in him, but should be adjudged to have simply a lien upon the land entered in his name for the value of the warrant and the interest thereon — cannot be sustained upon legal or equitable grounds. If the warrant was, in fact, Ransone's when the location was made, then he paid the whole consideration for the purchase, and the land became his absolutely, and the locator could have no legal or equitable interest in the same. The act of the persons who located the warrant was not a conversion of the same to their use, unless the owner chose to treat it as such, and repudiate the location. That he might have done, and, if he had chosen to do so, they

would have been liable to him only for the value of the warrant. He was not bound to repudiate the location in his name. He might, if he chose so to do, ratify their act, and treat them as his agents for the purpose of locating his warrant, and claim the benefit of their acts done in his name; and, in such case, the land purchased with his warrant in his name would be his land. That he chose to do in this case.

We think the court erred in granting the relief prayed for in the complaint. Whether the plaintiff has any equitable lien upon the lands in controversy for the amount of taxes paid thereon by himself and his grantors, is not a question in this action, and we give no opinion upon that subject.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to that court to dismiss the complaint.