Skinner vs. James and wife.

Skinner, Respondent, vs. James and wife, Appellants.

*October 15 — November 1, 1887.*

*Resulting trust in favor of one who furnishes the purchase money.*

Where a wife furnished to her husband one half the purchase price of a farm, upon an understanding that the title should be taken in her name, but she was present when the conveyance was made directly to her husband, and knew that fact and made no objection, *held* that, under secs. 2071, 2077, 2078, R. S., no trust resulted in favor of the wife, though she may have believed that her husband held the title in trust for her.

APPEAL from the Circuit Court for *La Fayette* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

This action of ejectment was commenced October 31, 1883. To establish his legal title, the plaintiff relies upon the facts, in effect, that January 9, 1860, the legal title to eighty acres of land in La Fayette county, being the W. ½ of the S. W. ¼ of section 33, township 3 N., of range 2 E., was conveyed to the defendant *William James* by warranty deed from Robert Bently and wife, and then recorded, which deed recited a consideration of $1,000; that thereupon the defendants went into the possession of said premises, and continued to live on the south forty thereof, as husband and wife; that November 30, 1877, Nichols, Shepard & Co. obtained and docketed a judgment in the circuit court for La Fayette county, against said *William James* and another, for $339.71; that December 7, 1877, the same party obtained and docketed another judgment in the same court, against said *William James* and another, for $975.35; that December 24, 1877, an execution was issued on each of said judgments to the sheriff of said county, who levied the same upon the north forty of said premises, and March 29, 1878, sold the same at sheriff's sale on said executions, and in satisfaction

thereof, to the plaintiff; that, said premises not having been redeemed from said sale, the said sheriff executed and delivered to the plaintiff a sheriff's deed of the same, July 23, 1881, which was recorded on the same day.

The defendants severally answered the complaint, which was in the statutory form, and pleaded a general denial, and that the defendant *Ann Moody James* was the sole owner in fee-simple of the land. Subsequently, and December 5, 1884, *Ann Moody James* amended her answer by adding an equitable counterclaim, to the effect that, about the time the land was so conveyed to *William James*, she handed him $500 of her own money, with the request that he buy the land for her home, and take the title in her name; that he paid said $500 thereon as a part of the purchase price; that said *William* took said deed in his own name, without her knowledge or consent; that, at the time of said purchase, she and her husband executed a mortgage on said premises to one John Moody to raise $500, with which she paid the balance of said purchase price; that she finally paid off the indebtedness created by said mortgage with her own money; that she had held possession of the land as her own separate property, claiming title to the same, ever since January 9, 1860; that until January, 1878, she supposed it had been deeded to her; that she then, for the first time, learned that it was deeded to said *William;* that she thereupon, and without delay, requested said *William* to convey the land to her in her own name, which he accordingly did, January 24, 1878, by deed reciting, in effect, that it was to confirm in her the equitable title which she always had; that said judgments, execution sales, and sheriff's deed were a cloud upon her title, which she prayed to have removed, and that she be adjudged to be the sole owner of the land.

The plaintiff, by way of reply, denied each and every allegation of the counterclaim. A jury was waived, and the whole cause was tried by the court.

At the close of the trial, the court, in addition to said several conveyances, mortgage, judgments, execution sale, and sheriff's deed, found, in effect, that the $500 paid down at the time of the purchase, January 9, 1860, was then the separate property of said *Ann Moody James;* that at the time she and her husband talked over making the purchase of the eighty, and it was then understood between them that it should be made for a home for them, and he considered it her property; that both were present when the deed from Bently was delivered to said *William,* and both then joined in giving the $500 mortgage to John Moody to pay the balance of the purchase price; that said deed to said *William* was by him recorded January 9, 1860, and soon thereafter taken by him, and delivered to his wife for safe-keeping, she being the custodian of all his papers, and that she had ever since had the custody thereof; that she knew that said deed was executed to her husband, but always believed that he held the title in trust for her; that the said mortgage indebtedness on said land was paid off by moneys derived from the stock and crops raised upon said land by the defendants; that they had lived upon the land ever since the time of said purchase, except three years, while they lived in Darlington, during which time said *William* rented the land for two years to one Troop, and one year to Logue, and used the rent as his own; that the indebtedness for which each of said judgments was recovered was incurred by said *William* and one Gallaghan as partners; that, at the time of the execution of said sheriff's deed to the plaintiff, the defendants were in possession of the forty in question, adversely to the plaintiff, and have been ever since; that no demand was made upon the defendants to surrender the possession to the plaintiff before this action was commenced; that the rental value of the forty in question is $80 per annum, or, for the three years intervening, $240; that the south forty was the defendant's homestead,

and that the same was agricultural lands, and not within any city or village.

As conclusions of law, the court found, in effect, that the forty acres of land described was owned in fee-simple by said *William* up to January 24, 1878, subject to no implied or other trust therein in favor of said Ann Moody; that said judgments in favor of Nichols, Shepard & Co. became liens upon said forty; that said conveyance from said *William* to his wife, *Ann Moody James*, January 24, 1878, was subject to said judgment liens upon said forty; that July 23, 1881, by virtue of said sheriff's deed, the plaintiff became seized in fee-simple of said forty, and has ever since that time been, and now is, the owner in fee-simple thereof, and well entitled to the possession thereof, and that during all of said time the defendants have unlawfully withheld the possession thereof from the plaintiff; that the plaintiff is entitled to judgment that the defendants surrender to him the possession of said forty, and that he recover from them $240 damages for the unlawful withholding of the same, and the rents and profits thereof from July 23, 1881, to the time of such findings, with costs,— and judgment was ordered accordingly. From the judgment entered in pursuance of said findings, December 19, 1884, the defendants bring this appeal.

For the appellants there was a brief by *M. M. Cothren* and *H. S. Magoon*, and oral argument by *Mr. Cothren.* They contended that, as between the defendants, equity would not permit the husband to hold the property, and should give no greater right to his creditor. There was an implied resulting trust in him to hold the same for his wife. The money borrowed to pay the balance of the price was paid by her out of the products of the farm.

For the respondent there was a brief by *Orton & Osborn*, and oral argument by *P. A. Orton.* To the point that, under secs. 2077, 2078, 2079, R. S., no trust could result in

favor of the wife on account of her furnishing part of the purchase money, they cited *Kluender v. Fenske*, 53 Wis. 118; *Knight v. Leary*, 54 id. 459; *Everett v. Everett*, 48 N. Y. 218.

CASSODAY, J. A careful examination of the record forces the conviction that the findings of the court are fully sustained by the evidence. This being so, the case must be determined with reference to the facts thus established. Among these facts it appears, in effect, that the defendant *Ann Moody James* and her husband talked over the making of the purchase of the eighty; that they went together to consummate the purchase; that she handed her husband the $500, to be paid as a part of the purchase price; that they were both present, January 9, 1860, when the deed was delivered to the husband; and the mortgage on the land executed by her and her husband; that she then knew that said deed was executed to her husband; that he had the deed recorded on the same day; that soon thereafter he delivered it to her for safe-keeping; that the deed remained in her custody for eighteen years prior to the deed to her from her husband.

Manifestly, the deed of purchase was so taken in the name of the husband with the knowledge and consent of the wife. There is nothing in the case indicating any fraud or mistake in so taking the deed in the name of the husband. This being so, the wife may well be conclusively presumed to have known the contents of the deed at the time it was taken, January 9, 1860. *Herbst v. Lowe*, 65 Wis. 321; *Hankins v. Rockford Ins. Co.* 70 Wis. 1 (decided herewith). True, it was found by the court that she always believed that her husband held the title in trust for her; but such belief was always necessarily accompanied with full knowledge on her part of the existing facts stated. She was, during all the time in question, conclusively pre-

sumed to know the law applicable to the facts thus within her knowledge. If the facts thus within her knowledge negative the existence of such trust, then her belief that her husband held the title in trust for her was certainly without any foundation.

Much was said on the argument as to a supposed equity in her favor, by reason of the payment of the $500, and the use or trust which would consequently result in her favor at common law. But all "uses and trusts, except as authorized and modified" by statute, were abolished in this state before the purchase in question, by what is now sec. 2071, R. S. Had it appeared in the deed that the husband took the title in his name, "to the use of, or in trust for," his wife, then there would have been no difficulty in sustaining her right to the land. Sec. 2075. *Sullivan v. Bruhling*, 66 Wis. 472. But such is not the fact; and, in construing a like section in the Michigan statute, it has been held that where such purpose is expressed in some other writings, and not in the deed itself, the legal title will not vest in the person for whose use or benefit it is taken. *Loring v. Palmer*, 118 U. S. 643. Much less would it so vest where there is no such writing, and both parties know all the facts.

But our statute goes further, and expressly precludes any use or trust resulting in favor of the wife by reason of her paying a part of the consideration, by sec. 2077, declaring that "when a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment is made; but the title shall vest in the person named as alienee in such conveyance, subject only to the provisions of the next section." The "next section" thus referred to, provides that "every such conveyance shall be presumed fraudulent as against the creditors of the person paying the consideration, and, when a fraudulent intent is not disproved, a trust shall result in

favor of such creditors to the extent," etc. Sec. 2078, R. S.

Had the judgments in question been recovered against the wife, instead of the husband, prior to such conveyance, a trust might have resulted in favor of such judgment creditor; but even then, according to the New York decisions under like statutes, no interest, legal or equitable, would have vested in the wife, to which a judgment and execution could have attached, as the statute would merely have imposed " *a pure trust* " in favor of such creditor " upon the legal estate " in the hands of the husband, which would have been enforceable in equity only. *Garfield v. Hatmaker*, 15 N. Y. 475. Of course, the present case does not come within the exception in favor of the creditors of the person paying the consideration mentioned in the last section cited, because this is a creditor of the husband who held the legal title. True, the statute provides that " sec. 2077 shall not extend to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance in his own name, *without the knowledge or consent* of the person paying the consideration, or when such alienee, *in violation of some trust*, shall have purchased the lands so conveyed with moneys belonging to another person." Sec. 2079, R. S. A struggle has here been made upon the facts, to bring the case, if possible, within the provisions of this last section, in order to relieve it from the effect of sec. 2077, *supra;* as in the case of *Kluender v. Fenske*, 53 Wis. 118. But the facts stated negative such contention, and take the case out of that rule. Here it appears affirmatively, as indicated, that the deed was taken in the name of the husband, with the knowledge and consent of the wife, and in her presence; which precluded any violation of any trust imposed in the husband by the wife.

It is very clear that the facts bring the case squarely within the provisions of sec. 2077, and the rights of the

parties must therefore be determined by it.  In the language of this section, substantially, and in accordance with its uniform construction by this and other courts, under like provisions, the deed of January 9, 1860, vested the title to the lands in question in the husband, the person named as alienee in such conveyance, with no use or trust resulting in favor of the wife, the person by whom a part of the consideration was paid.  *Week v. Bosworth,* 61 Wis. 85; *Cerney v. Pawlet,* 66 Wis. 265, 266.  Such title remained in the husband until some time after the rendition and docketing of the judgment against him.  By the docketing of those judgments, they respectively became liens upon the separate real estate of the husband, as one of the judgment debtors. Sec. 2902, R. S.; *Evans v. Virgin, ante,* pp. 159–161.  Such liens were not destroyed, nor in any way frustrated, by his subsequent conveyance to his wife.  The executions recited the judgments, and the time of docketing them, and were against the real property belonging to the debtors, respectively, on the day when the judgments were so docketed. Id.; sec. 2969, R. S. subd. 1.  And the right and title of such judgment debtor, at the time of such docketing, in and to the land in question, was sold to the plaintiff on such executions, and conveyed to him by the sheriff's deed. Secs. 3016, 3017, R. S.

It follows that, before the commencement of this action, the plaintiff acquired the legal title to the forty acres of land in question, and the defendants have failed to make out any defense.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 35 N. W. Rep. 37.— REP.